IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARY BOLTINGHOUSE, JR., ROBERT TAYLOR, and MARK CANALES, on behalf of themselves and all other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES, INC.,<br><br>Defendant. | No. 15 CV 6223<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Gary Boltinghouse, Jr., Robert Taylor, and Mark Canales worked as "field service specialists" for Defendant Abbott Laboratories, Inc. ("Abbott"). Plaintiffs allege that Abbott violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing to pay them, and other similarly situated employees, for overtime work. Plaintiffs now move for conditional class certification and court-authorized notice under the FLSA. As explained here, the court grants the motion for conditional certification [35] and authorizes Plaintiffs to proceed with notice to potential collective action members.

## FACTUAL BACKGROUND

Plaintiffs filed this putative collective action on July 16, 2015, alleging that Defendant misclassified them and all other individuals who were employed by Defendant as field service specialists, denying them overtime compensation in violation of the FLSA. (Pls.' Mem. of Law in Supp. of Mot. for Cond'l Class Cert., Doc. 36, 2–3.) Plaintiffs contend they performed non-exempt work, but that Defendants knowingly misclassified them as performing exempt work and failed to maintain an accurate record of hours worked, as required by federal regulations. (Compl., Doc. 1, ¶¶ 18–25, 33.) Plaintiffs propose a class definition of:

> All persons who worked as field service specialists (also referred to as core lab specialists, prism specialists, hematology support specialists, or other job titles

performing similar duties) for Abbott Laboratories, Inc. at any time since three years prior to the filing of this Complaint.

(Compl. ¶ 28.). Plaintiff Boltinghouse alleges that he worked approximately 72 hours during the workweek ending June 7, 2015; Plaintiff Taylor alleges that he worked approximately 50 to 55 hours during the workweek ending June 21, 2015; and Plaintiff Canales alleges that he worked approximately 60 hours during the workweek ending March 28, 2015, all of them without receiving overtime pay. (Compl. ¶ 31.)

In support of their motion for conditional certification and court-authorized notice, Plaintiffs have submitted six declarations. All six declarants—named Plaintiffs Boltinghouse, Canales, and Taylor, and additional Plaintiffs Mark Johnson, Daniel Maag, and Gerald Newman—have worked for Defendant as field service specialists; all but Mr. Maag are current employees of Defendant and have held various job titles during the course of their employment. (Boltinghouse Decl., Doc. 37 Ex. 1, ¶ 2; Canales Decl., *id.*, ¶ 2; Johnson Decl., *id.*, ¶ 2; Maag Decl., *id.*, ¶ 2; Newman Decl., *id.*, ¶ 2; Taylor Decl., *id.*, ¶ 2.) All six describe their job duties as "to install, repair, service and maintain diagnostic medical instrumentation, and test devices and equipment at Abbott's customer sites," and all but Maag and Johnson add that "[m]y primary job duties did not change when my specific title changed." (Boltinghouse Decl. ¶ 3; Canales Decl. ¶ 3; Newman Decl. ¶ 3; Taylor Decl. ¶ 3.)

All six declarants are or were salaried employees, classified by Defendant as exempt from overtime compensation. (Boltinghouse Decl. ¶ 4; Canales Decl. ¶ 4; Johnson Decl. ¶ 4; Maag Decl. ¶ 4; Newman Decl. ¶ 4; Taylor Decl. ¶ 4.) Each declares that he received "training specifically for the medical instrumentation, devices and equipment" that he is or was "assigned to install, repair, service and maintain"; that he has "attended training with other field service specialists, including individuals with the specific titles of core lab specialists and hematology support specialists"; and that he "occasionally see[s] other core lab specialists and hematology support specialists . . . working at the same hospitals" as himself and has "observed that they

perform similar job duties" as he does. (Boltinghouse Decl. ¶¶ 6-7; Canales Decl. ¶¶ 6-7; Johnson Decl. ¶¶ 6-7; Maag Decl. ¶¶ 6-7; Newman Decl. ¶¶ 6-7; Taylor Decl. ¶¶ 6-7.) Each declarant also avers that:

> [b]ased on these observations, my own experience, training and also conversations with other Abbott employees, I believe that Abbott assigned similar job duties to core lab specialists and hematology support specialists, classified them as exempt from overtime compensation, and required them to work overtime for which they are not paid an overtime premium.

(*Id.*) Beyond these boiler plate paragraphs, the declarations vary in the declarant's dates of employment by Defendant, official title as either a core lab specialist or hematology support professional, number of average overtime hours worked, and the names of other exempt hematology support specialists the individual Plaintiffs observed performing similarly duties.

Plaintiffs have submitted a proposed notice to putative collective action members and a proposed reminder notice. (Notice of Lawsuit with Opportunity to Join, Doc. 37 Ex. 2; Re: Lawsuit Against Abbott Laboratories, Inc., Doc. 37 Ex. 3.) At the parties' request, the Court on November 2, 2015 issued a broad protective order governing confidential information produced in discovery.

## **LEGAL ANALYSIS**

The FLSA generally requires overtime pay for work performed in excess of 40 hours per week. 29 U.S.C. § 207. Federal regulations, however, exempt employees compensated at a rate of at least $455 per week, who perform "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and who exercise "discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)[1]. The FLSA also permits collective actions by employees:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No

---

[1] Amendments to the 29 C.F.R. § 541.200(a), published by the Department of Labor on May 23, 2016, will become effective December 1, 2016. The amendments do not affect this case. .

> employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Employees must receive "accurate and timely notice concerning the pendency of the collective action[.]" *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties[.]" *Id.* This court therefore has "discretionary authority to oversee the notice-giving process." *Id.* at 174. An FLSA collective action may only be conditionally certified if the plaintiffs show that members of the putative class are similar situated; that is, that there exists "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws . . . ." *Molina v. First Line Sols. LLC*, 556 F. Supp. 2d 770, 786–87 (N.D. Ill. 2007). In this case, the required factual nexus are the duties performed Plaintiffs and members of the putative class.

The Seventh Circuit "has yet to address how district courts should manage collective actions," but "courts in this district have commonly applied a two-part test to determine whether an FLSA claim may proceed as a collective action." *Binissia v. ABM Indus., Inc.*, No. 13 C 1230, 2014 WL 793111, *3 (N.D. Ill. Feb. 26, 2014) (citing *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008)). At the first stage, the court conditionally certifies the collective action if the plaintiffs "make a 'modest factual showing' sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Binissia*, 2014 WL 793111, at *3 (citing *Smallwood v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2010), and *Jirak*, 566 F. Supp. 2d at 847)). This modest factual showing cannot be founded solely on the complaint's allegations. Rather, "plaintiffs must provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents" of a common policy to which they and other similarly situated employees were subjected. *Id.* It must also appear that the common policy, if established, violated the law; thus, "a plaintiff's job

title alone is 'insufficient to establish the exempt status of an employee. Instead, the court must look beyond the formal [] job descriptions and to their day-to-day responsibilities to determine whether employees are misclassified.'" *Gromek v. Big Lots, Inc.*, No. 10 C 4070, 2010 WL 5313792, *4 (N.D. Ill. Dec. 17, 2010) (citing *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 579 (E.D. La. 2008). In the second stage, after the completion of discovery and the opt-in process, the court reexamines the conditional certification to determine whether trial as a collective action is proper. *Binissia*, 2014 WL 793111, at *3 (citing *Jirak*, 566 F. Supp. 2d at 848).

I. **Conditional Certification**

Defendant notes that other district courts have denied certification where plaintiffs submitted virtually identical statements containing only conclusory allegations. (Def.'s Resp. [44] at 9.) In *Songer v. Dillon Resources, Inc.*, 569 F. Supp. 2d 703 (N.D. Tex. 2008), the plaintiffs' affidavits consisted largely of statements such as "[a]ll drivers for Sunset and Dillon are working overtime because anyone who fails to complete an assigned delivery will lose his minimum guarantee in a later week where there is no work." *Id.* at 707. Those affidavits, the court observed, "contain nothing to establish that the plaintiffs have personal knowledge" of how other employees were affected by the alleged common policy. *Id.* In *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504 (S.D.N.Y. 2010), a putative FLSA collective action alleging violations of federal and New York minimum wage laws, the plaintiffs submitted the affidavit of a single employee stating that he had been paid a base salary below the minimum wage, and that he had witnessed other employees being paid below the minimum wage, as well. The employee's affidavit presented no information about the identity of the other employees or whether they were eligible for tips. *Id.* at 510. Defendant also cites *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1234 n. 22 (S.D. Ala. 2008), in which conditional certification was granted. The *Longcrier* court accepted declarations as evidentiary support but "suggested to both sides" in a footnote that "declarations are far more helpful and enlightening

to the extent they are molded and personalized to the circumstances of the individual declarant, rather than amounting to a signature on a generic mass-produced form drafted by counsel." *Id.* Nevertheless, plaintiffs met the "requisite modest factual showing to satisfy [the] fairly lenient standard for purposes of conditional certification." *Id.* at 1236.

Plaintiffs' modest evidentiary offerings in this case are better supported than those at issue in cases like *Songer* and *Guan Ming Lin*. While the six declarations offered by Plaintiffs in support of their motion for conditional certification are nearly identical, each declarant specifies his dates of employment with Defendant under various job titles and his average number of overtime hours worked without compensation at different times during the course of his employment, and each names at least one of Defendant's employees whom he has observed performing similar job duties to his own. Each also states that his belief that other field service specialists have not received overtime compensation is based on those observations, his own experience and training, and conversations with other of Defendant's employees, not idle speculation. At this stage of the litigation, plaintiffs seeking conditional certification need not meet the evidentiary standards set forth in Federal Rule of Civil Procedure 56(e). *See White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 369 (E.D. Tenn. 2006); *see also Reyes v. AT&T Mobility Services LLC*, 759 F. Supp. 2d 1328, 1332 (S.D. Fla. 2010) (holding affidavits in support of conditional class certification were admissible under a less strict evidentiary standard than Rule 56); *see also Smith v. C.H. James Rest. Holdings, L.L.C.*, No. 11 C 5545, 2012 WL 1144617, *5 (N.D. Ill. Apr. 5, 2012) (refusing to strike certain declarations in FLSA collective action because plaintiffs were "not required to meet evidentiary burdens" at the conditional certification stage).

Defendant rightly asserts that some district courts have declined to certify a putative FLSA collective action alleging violations of federal overtime provisions, since "[d]etermining whether an employee is exempt is extremely individual and fact-intensive, requiring a detailed analysis of the time spent performing administrative duties and a careful analysis of the full

range of the employees' job duties and responsibilities." *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (internal citations omitted). Defendant suggests that at least some of the six Plaintiffs who filed declarations in this case earn enough that they are exempt from overtime pay requirements. But in this district, courts agree that "'concerns regarding a lack of common facts among potential class members and the need for individualized inquiries' should be raised at step two," not step one. *Lukas v. Advocate Health Care Network & Subsidiaries*, No. 14 C 2740. 2014 WL 4783028, *3 (N.D. Ill. Sept. 24, 2014) (quoting *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2012 WL 580775, *4 (N.D. Ill. Feb. 22, 2012), and citing *Jirak*, 566 F. Supp. 2d at 848) (brackets omitted). *See also Perez v. Comcast*, No. 10 C 1127, 2011 WL 5979769, *1 (N.D. Ill. Nov. 29, 2011) (holding that at conditional certification stage, "the court does not resolve factual disputes or decide substantive issues going to the merits."). Discovery will permit the parties to show which putative class members, if any, are exempt, and which are not. At least at first blush, Plaintiffs' job descriptions do not appear comparable to the white-collar administrative work contemplated by 29 C.F.R. § 541.200(a). "At this stage, it is sufficient that Plaintiffs have shown that [Defendant has a policy] applied uniformly to all potential plaintiffs and that the policy appears to be inconsistent with FLSA regulations." *Binissia*, 2014 WL 793111, *5.

**II.    Court-Authorized Notice**

Defendant objects to Plaintiffs' proposed notice on the bases that (1) it includes a case caption on the first page, which improperly "could suggest to potential plaintiffs that the Court has lent its imprimatur to the merits of this case," *Jirak*, 566 F. Supp. 2d at 851; and (2) it fails to inform putative plaintiffs that they may be required to sit for a deposition, otherwise participate in discovery, or pay defense counsel's fees if Defendant prevails in the litigation. It also objects to Plaintiffs' proposed plan of notice distribution via e-mail (which Plaintiffs propose in addition to the traditional U.S. Postal Service method) and through Plaintiffs' counsel rather than through a third-party administrator, and to Plaintiffs' proposed reminder e-mail.

These concerns do not trouble the court. First, the proposed notice's case caption is unproblematic. In *Jirak*, the court ordered that the plaintiff either remove the court name on the notice or include the entire case caption "so it is clear the notice is a court document and not some type of letter from the Court." 566 F. Supp. 2d at 851. Plaintffs' proposed notice adheres to this direction. It includes a complete case caption and, on page 3, the following bold-face disclaimer:

> **THIS NOTICE AND ITS CONTENT HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION, THE HONORABLE JUDGE REBECCA R. PALLMEYER. THE COURT HAS MADE NO DECISION ABOUT THE MERITS OF PLAINTIFFS' CLAIMS OR DEFENDANT'S DEFENSES.**

This language is sufficient to eliminate any suggestion of judicial endorsement of Plaintiffs' position in the case.

As to Defendant's next concern, while some courts have held that potential plaintiffs in an FLSA collective action "should be advised of the possibility that opt-in plaintiffs may be required to provide information, appear for a deposition, and/or testify in court," *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012), such a requirement is not common in this district. Where an FLSA collective action could include a large number of opt-in plaintiffs, a warning to each potential plaintiff that he or she may be required to sit in depositions and testify is unnecessary. The possibility that any one plaintiff will be so required is slim, *Wynn v. Express, LLC*, No. 11 C 4588, 2012 WL 874559, *6 (N.D. Ill. Mar. 14, 2012); representative discovery may be the superior approach anyway, *see, e.g.*, *Oropeza v. AppleIllinois, LLC*, No. 06 C 7097, 2010 WL 3034247, *7 (N.D. Ill. Aug. 3, 2010); and the risk of chilling would-be plaintiffs' participation in the collective action may well outweigh the risk to those plaintiffs of incurring litigation costs (by way of lost time or even counsel fees) as a result of their participation. *See, e.g.*, *Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775 (C.D. Ill. 2015); *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 608 (W.D. Wis. 2006). Defendant is a large corporation with tens of thousands of employees, and the odds of a fee award to prevailing

defendants under 216(b) are long.  *See Herrera v. Unified Mgmt. Corp.*, No. 99 C 5004, 2000 WL 1220973, *3 (N.D. Ill. Aug. 18, 2000).  The court is satisfied that such a warning to potential opt-in plaintiffs is unnecessary in this case.

Defendant cites *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745 (N.D. Ill. 2011), for the proposition that notices should be sent by a third-party administrator rather than plaintiffs' counsel, as the notice proposed seeks personal information from putative opt-ins—their names, phone numbers, physical addresses, and e-mail addresses.  In *Nehmelman*, another FLSA collective action, the plaintiffs requested that potential opt-ins furnish information concerning their dates and location of employment as well as Social Security numbers.  *Id.* at 767.  The court allowed the notice, reasoning that plaintiffs' right to discover appropriate, relevant information from potential opt-ins outweighs those potential opt-ins' privacy rights and that notice could be sent either by plaintiffs' counsel or by a third-party administrator paid for by the defendant.  *Id.* at 766.  Defendant has volunteered to pay for a third-party administrator, but courts in this district have often rejected precisely this sort of privacy argument, particularly where a protective order is already in place (as it is here).  *See, e.g.*, *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 554–55 (N.D. Ill. 2008); *Brand v. Comcast Corp.*, No. 12 C 1122, 2012 WL 4482124, *9 (N.D. Ill. Sept. 26, 2012); *Anyere*, 2010 WL 1542180, *4.  As these other courts have concluded, this court believes the protective order adequately prevents abuse of the confidential information of potential or actual opt-ins, and renders the use of a third-party administrator unnecessary.

Plaintiffs' request for potential plaintiffs' names, phone numbers, and physical addresses is standard practice in this district.  Plaintiffs' request for e-mail addresses, to enable notice via e-mail as well as the Postal Service, is more unusual.  District courts have split on the question whether e-mail notice is appropriate in the FLSA collective action context.  *Compare Espenscheid v. DirectSat USA, LLC*, N. 09 cv 625 bbc, 2010 WL 2330309, *14 (W.D. Wis. Jun. 7, 2010) (collecting cases from various districts and rejecting e-mail notice due to "the potential

for recipients to modify and redistribute email messages") *with Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, *5 (S.D. Ohio Feb. 26, 2015) (noting that notice via both U.S. mail and e-mail to all potential opt-in plaintiffs in an FLSA action "appears to be in line with the current nationwide trend"). This court concludes that dual postal mail and e-mail distribution is likely to "advance[ ] the remedial purpose of the FLSA by increasing the likelihood that all potential opt-in plaintiffs will receive notice." *Shoots v. iQor Holdings US Inc.*, No. 15 CV 563 (SRN/SER), 2015 WL 6150862, *22 (D. Minn. Oct. 19, 2015). Because Plaintiffs propose that the notice be e-mailed as a .pdf attachment, not included in the body of the e-mail message sent to potential opt-ins, the risk for improper modification of the notice appears to be minimal.

Finally, Defendant objects to Plaintiffs' proposal that a reminder notice be sent 15 days before the end of the opt-in period, a practice that Defendant contends is "unnecessary and potentially could be interpreted as encouragement by the court to join the lawsuit." *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 220 (E.D. Mich. 2010). Plaintiffs cite several cases approving the use of a reminder notice, and Defendant offers no contrary authority. The court concludes this procedure, too, is reasonable, and therefore authorizes Plaintiffs to send one reminder notice to any potential opt-in plaintiff who has not replied 15 days prior to the end of the opt-in period.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification and court-authorized notice [35] is granted. The parties are directed promptly to proceed with notice.

ENTER:

Dated: July 20, 2016

_____
REBECCA R. PALLMEYER
United States District Judge